**This document has been electronically entered in the records of the United States Bankruptcy Court for the Southern District of Ohio.**

**IT IS SO ORDERED.**

Dated: April 22, 2022



Guy R. Humphrey
United States Bankruptcy Judge

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| Belfor U.S.A. Group Inc., | : | Case No. 3:22-mp-00301 |
| *Plaintiff*, | : | Judge Humphrey |
| v. | : | |
| Salem Consumer Square OH LLC, et al., | : | |
| *Defendants*. | : | |

**RECOMMENDATIONS FOR THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO TO REMAND CAUSE OF ACTION TO THE MONTGOMERY COUNTY, OHIO COURT OF COMMON PLEAS**

**I. Introduction**

For the reasons discussed below, the court recommends that the District Court grant Plaintiff's request to remand the causes of action against certain non-debtor parties to the Montgomery County (Ohio) Court of Common Pleas and permissively abstain from the litigation removed from the state court. The court also suggests that mandatory abstention is applicable if

the District Court finds that it does not have diversity jurisdiction over the state court litigation. The court recommends that all other relief requested by the parties be denied.

## II.  Procedural Background

This matter is before this court pursuant to the *Order Referring Case to the United States Bankruptcy Court for the Southern District of Ohio, Western Division at Dayton for Further Proceedings Pursuant to the United States District Court for the Southern District of Ohio (the "District Court"), Amended General Order No. 05-02 (Amended Standing Order of Reference); Rulings on Motion (Docs. 15, 23, 28 and 30) Stayed Pending Report and Recommendation from the United States Bankruptcy Court* (the "Referral Order") (doc. 44), which was entered in the United States District Court, Southern District of Ohio, Case No. 3:21-cv-78 on March 4, 2022. The District Court requests recommendations of this court regarding whether to transfer the causes of action to the United States Bankruptcy Court for the Western Division of Pennsylvania (the "Pennsylvania Bankruptcy Court") at Pittsburgh, Case No. 21-20020-CMB (the "Bankruptcy Case") or whether, in the alternative, it should be remanded, in whole or in part, to the Montgomery County, Ohio Court of Common Pleas (the "State Court").

In preparing its recommendations the court reviewed the pending motions:

- *Motion to Transfer Venue* (doc. 15) filed by Defendant Salem Consumer Square OH LLC

    o *Plaintiff's Objection to Defendant Salem Consumer Square OH LLC's Motion to Transfer Venue* (doc. 24)

- *Plaintiff's Motion to Remand or to Abstain from Hearing State Court Action* (doc. 23)

    o *Response to Plaintiff's Motion to Remand or to Abstain from Hearing State Court Action* (doc. 25) filed by Defendant Salem Consumer Square OH LLC

    o *Reply Memorandum in (I) Further Support of Plaintiff's Motion to Remand or to Abstain from Hearing State Court Action and (II) Opposition to the Response to Plaintiff's Motion* (doc. 27) filed by Plaintiff Belfor U.S.A. Group, Inc.

- *Defendants, Moonbeam Capital Investments and Leon Williams, Jr's Motion to Stay Action Pending Bankruptcy Proceedings and Motion for Protective Order* (doc. 28)

    o *Response in Opposition to Defendants, Moonbeam Capital Investments and Leon Williams, Jr's Motion to Stay Action Pending Bankruptcy Proceedings and Motion for Protective Order* (doc. 32) filed by Plaintiff Belfor U.S.A. Group, Inc.

- *Motion of Defendant Salem Consumer Square OH, LLC to Hold Further Proceedings in Abeyance Until the Bankruptcy Court Adjudicates Plaintiff's Claim* (doc. 30)

    o *Belfor's Response in Opposition to Defendant Salem Consumer Square OH, LLC's Motion to Hold Further Proceedings in Abeyance Until the Bankruptcy Court Adjudicates Plaintiff's Claim* (doc. 33)

    o *Reply Memorandum of Defendant Salem Consumer Square OH, LLC in Support of Its Motion to Hold Further Proceedings in Abeyance Until the Bankruptcy Court Adjudicates the Plaintiff's Claim* (doc. 34)

This court held oral argument on all the pending motions on April 6, 2022. See doc. 1 (scheduling order). The court also reviewed the supplemental memoranda filed by Salem Consumer Square Ohio, LLC ("Salem") and by Belfor U.S.A. Group Inc. ("Belfor") in this miscellaneous proceeding. Docs. 6, 7.

### III. Factual Background

On February 26, 2020, Belfor filed a complaint in the State Court against Salem, Moonbeam Capital Investments ("Moonbeam"), and Nation's Roof of Ohio, LLC.[1] Case No. 3:21-cv-78 (S.D. Ohio), Doc. 1, Exhibit A.[2] It also filed a separate complaint in the State Court against Leon W. Williams, Jr. ("Williams") containing similar allegations to the complaint against Salem and Moonbeam. Case No. 2020 CV 02130 (State Court), Doc. 1. Belfor alleges through its complaints as follows. Belfor was authorized to perform "emergency-services and

---

[1] It appears Nation's Roof was fully paid through Salem's confirmed Second Amended Plan of Reorganization [Bankruptcy Case, Doc. 309 ¶ 5.3] and is waiting on the resolution of the pending procedural motions before attempting to extricate itself from the litigation.

[2] Except as specifically noted, the court is citing to Case No. 3:21-cv-78 (S.D. Ohio) in any reference to documents originally filed in the State Court Case.

3

remediation work" for real property in Trotwood, Ohio that was damaged by a tornado. Doc. 1, Exhibit A at ¶ 1. Moonbeam was (but is no longer) the parent company of Salem. *Id.* at ¶ 3. Williams was a joint agent of Salem and Moonbeam. *Id.* at ¶ 19. Salem's insurer, Travelers, issued checks in the total amount of $2,800,000. *Id.* at ¶ 23. Salem and/or Moonbeam fraudulently directed Travelers to issue the checks to Moonbeam, and not Belfor. *Id.* at ¶ 24. Belfor was never paid any compensation for the work completed. *Id.* at ¶ 25. Belfor sued on the following counts: breach of express or implied contract (against Salem and Moonbeam); Promissory Estoppel (against Moonbeam); Quantum Meruit (Against Moonbeam); Unjust Enrichment (against Moonbeam); Fraud (against Salem and Moonbeam); Conversion (against Salem and Moonbeam); Tortious Interference with Business Relationship & Contract (against Salem and Moonbeam); Foreclosure of Mechanic's Lien (All Parties); Declaratory Judgment (All Parties). *Id.* at 5-19. Belfor seeks compensatory and punitive damages against Salem and Moonbeam. *Id.* at 19-20.

The State Court complaint filed against Williams alleges claims for Fraud, Conversion, Civil Recovery for Theft Offense Under [Ohio] R.C. §§ 2307.60 and 2307.61, Tortious Interference with Business Relationship & Contract, and Civil Conspiracy. Belfor seeks compensatory and punitive damages and attorney fees against Williams. Case No. 2020 CV 02130 (State Court), Doc. 1 at 5-16. On November 19, 2020 the judge presiding over both the State Court complaints entered an order consolidating those two actions and ordered that all future filings be filed in the case number assigned to the action against Salem and Moonbeam (collectively the "State Court Case"). Doc. 1, Exhibit I.

Salem filed a Chapter 11 petition on January 5, 2021 in the Pennsylvania Bankruptcy Court. Salem's Second Amended Chapter 11 Plan of Reorganization ("the "Plan") was

4

confirmed on November 12, 2021. Bankruptcy Case, Docs. 309 (Plan), 342 (Confirmation Order). The Plan addresses issues relevant to the current dispute. First, the Plan is being funded by Moonbeam. Plan, Article VIII, ¶ 8.1. Under the Plan, Belfor was paid $1,100,000 toward the disputed Belfor proof of claim. Plan, ¶ 5.2A. If the Belfor claim is determined to be less than $1,100,00, Belfor must refund the difference. Conversely, if Belfor's claim is allowed at a greater amount than $1,100,000, the balance would be paid to Belfor. The Plan explicitly preserved the rights of Belfor against "any non-debtor individual or entity," which included, but was not limited to, Moonbeam and Williams. Plan, ¶ 14.2.

The amount of Belfor's claim (and its secured status) is being adjudicated in a related adversary proceeding that was filed on March 5, 2021, 21-02019-CMB (the "AP") in the Pennsylvania Bankruptcy Court. The only two parties to the AP are the plaintiff, Salem, and the defendant, Belfor. The complaint seeks a determination under 11 U.S.C. § 506 as to the amount, priority, and extent of Belfor's claim. Belfor's proof of claim was filed in the amount of $4,339,773.18, plus accumulating interest. Bankruptcy Case, Proof of Claim 5-1. The AP parties, along with non-parties Williams and Moonbeam, are in a significant discovery dispute that is scheduled for mediation. The parties hope the AP can be tried later this year, but that is not certain.

On the same day the AP was filed, Salem removed the State Court Case to the United States District Court for the Southern District of Ohio. Doc. 1.

### IV. Legal Standard and Analysis

Belfor seeks a remand to the State Court to adjudicate its claims against Moonbeam and Williams. Salem, Moonbeam, and Williams primarily argued to this court that the District Court should stay the litigation until the AP is adjudicated. The secondary argument, not emphasized to this court, is that the District Court should transfer the State Court Case to the United States

5

District Court for the Western District of Pennsylvania, the District in which Salem's bankruptcy case has been pending.

Section 1452(b) of Title 28 of the U.S. Code provides for remand of a cause of action removed to a district court:

> The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order entered under this subsection remanding a claim or cause of action, or a decision to not remand, is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title.

28 U.S.C. § 1452(b). The court can consider a number of factors in determining whether remand would be equitable including:

1. duplicative and uneconomical effort of judicial resources in two forums;
2. prejudice to the involuntarily removed parties;
3. forum non conveniens;
4. a holding that a state court is better able to respond to a suit involving questions of state law;
5. comity considerations;
6. lessened possibility of an inconsistent result; and
7. the expertise of the court in which the matter was pending originally, e.g., a Court of Claims, or the United States Customs Court.

*Cordes v. Continental Holdings, Inc.* (*In re Continental Holdings, Inc.*), 158 B.R. 442, 444 (Bankr. N.D. Ohio 1993). By contrast, section 1412 of Title 28 allows a district court "to transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties." 28 U.S.C. § 1412.[3]

Although the parties debated different interpretations of the jurisdictional conclusions of the Referral Order, the court assumes that the District Court determined it has subject matter jurisdiction to determine all the pending motions before it and to refer the motions to this court

---

[3] *EnSource Invs. LLC v. Tatham*, No. 3:17-cv-00079-H-JMA, 2017 WL 3923784, at *2, 2017 U.S. Dist. LEXIS 145208, at *8 (S.D. Cal. Sept. 7, 2017) ("Once a bankruptcy case is transferred under Section 1412, the transferee district court refers the case to the bankruptcy judges for that district.").

6

for recommendations. As this court will explain, regardless of jurisdictional questions and whether removal was originally appropriate under § 1452(a)[4], the court does not recommend that the motion to transfer venue to the Western District of Pennsylvania be granted. The court will also address Belfor's alternative argument that the District Court should abstain, under both the mandatory and permissive abstention statute, and allow the claims against Moonbeam and Williams to be determined by the State Court.

A.  **The District Court Should Remand the Causes of Action Against Moonbeam and Williams**

The AP will resolve the issue of the appropriate amount, if any, of Belfor's claim against Salem and address any disputes about the secured status of that claim. But it will not address the validity of the claims against the non-debtor third parties, Williams and Moonbeam, or, if the claims are proven, their liability. See *Lynch v. Johns-Manville Sales Corp.*, 710 F.2d 1194, 1199 (6th Cir. 1983) ("[I]t is initially observed that any duplicative or multiple litigation which may occur is a direct by-product of bankruptcy law. As such, the duplication, to the extent that it may exist, is congressionally created and sanctioned."). The confirmed Plan explicitly provides that these parties are not entitled to any third-party release in regard to the Belfor litigation. And, of course, non-debtor third-party releases are generally challenging to receive in a Chapter 11 plan. See e.g. *In re K3D Property Svcs.*, 635 B.R. 297, 311-16 (Bankr. E.D. Tenn. 2021) (discussing factors for a post-confirmation injunction to protect third party insiders).

While the facts underlying the State Court Case overlap to a large degree with the AP, it is beyond question that the Pennsylvania Bankruptcy Court cannot grant complete relief under

---

[4] "A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a).

any circumstances. First, the adversary proceeding involves only Salem as a party, and not Moonbeam or Williams. Second, Belfor has demanded a jury trial against Moonbeam and Williams, and even assuming, for argument, that a bankruptcy court can conduct a jury trial under any circumstances, it is impossible without all the parties' consent, and Belfor does not consent. 28 U.S.C. § 157(e). Third, Belfor is pursuing specific tort claims under Ohio law, and those claims provide for the possibility of punitive damages beyond what Belfor may be awarded on its asserted secured claim against Salem in the Bankruptcy Case. Further, although Salem alleges generally that the defendants acted in concert, it is not clear that Williams', Moonbeam's, and Salem's liability will be the same.

Still, the argument suggests it would be more orderly or efficient to wait until the AP is completed and that simultaneous litigation in two forums represents a burden on the debtor. And further, Belfor has already received $1,100,000 pursuant to the Plan and would receive any additional amount if it succeeds in the AP. At that point, Belfor still could pursue its state law claims against Moonbeam and Williams. This approach, according to Salem, Moonbeam, and Williams, would avoid inconsistent outcomes, a race to judgment problem, and discovery complications.

This court is unconvinced for several reasons. First, as a general matter, such a stay against non-debtor parties generally is disfavored. *In re Richard B. Vance and Co.*, 289 B.R. 692, 697 (Bankr. C.D. Ill. 2003). Second, the court believes the State Court can easily manage and determine appropriate discovery, and consider whether requests would be duplicative of what has been provided by Moonbeam and Williams as non-parties to the AP. Third, the possibility of inconsistent rulings, to the extent it is an issue at all, will exist regardless because the disputes between the various parties cannot be resolved in a single forum under any circumstances. In one

8

instance, the AP adjudication may have findings that differ from the State Court. In the other instance, the opposite could occur. This argument suggests that the State Court case should be held in abeyance because it would be moot if Belfor prevailed. But again, such a conclusion is speculative at best because damages against Williams and Moonbeam could exceed what is awarded against Salem in the AP. Fourth, the assets of Salem, as a reorganized debtor, are not and could not be pursued by Belfor. Finally, any delay prejudices the ability of Belfor to have its allegations timely resolved in an appropriate tribunal.

Perhaps more fundamentally, this court cannot recommend delaying the litigation against Williams and Moonbeam any further. It bears repeating that these non-debtor parties were not released from liability in the Plan. See ¶ 14.2. And Salem should not receive the same benefits as a debtor-in-possession after the Plan was confirmed, the effective date of the Plan has passed, and the Plan is therefore consummated. As a reorganized debtor, it is litigating a single AP involving itself and Belfor. It is no longer facing the more extraordinary burdens that a Chapter 11 reorganization entails. See Plan ¶ 8.3.1 ("[T]he debtor shall continue as a debtor-in-possession *until the Effective Date*.") (emphasis added). The record shows the conditions for the Effective Date of the Plan have passed. See ¶ 13.7 (defining "Effective Date").

This court recognizes that the Plan provides that the automatic stay continues. Plan, Article XIII, ¶ 13.4. Salem has argued that the State Court case could violate 11 U.S.C. § 362(a)(1) and (a)(3). Generally, this court well understands that, under limited circumstances, actions in which a debtor is not a party may still run afoul of the automatic stay.[5] *Harker v.*

---

[5] Salem is focused in on § 362(a)(1), which bars a creditor from pursuing a pre-petition lawsuit against the debtor. But the litigation only concerns the claims of Moonbeam (a separate legal entity from Salem) and Williams. Salem raises concerns that improper discovery may be sought. See *Abington Emerson Capital, LLC v. Adkins*, No. 2:17-cv-143, 2018 U.S. Dist. LEXIS 92806, at *7-9, 2018 WL 2454601, at *2-3 (S.D. Ohio June 1, 2018) (under specific facts, court granted stay of litigation until plaintiff was granted relief from the debtor against two debtor-defendants). The *Adkins* court noted five factors commonly considered for such a stay: "(1) the need for a stay; (2) the stage of litigation; (3) whether the non-moving party will be unduly prejudiced or tactically disadvantaged;

9

*Eastport Holdings, LLC* (*In re GYPC, Inc.*), 634 B.R. 983, 1002-06 (Bankr. S.D. Ohio 2021). However, the State Court has determined that the automatic stay does not protect Moonbeam and Williams. Doc. 23 (Exhibit 1). In addition, nothing in the State Court action would interfere with the determination of the AP or seek to control property of Salem. The motion to transfer venue (doc. 15) refers to the possibility of "double recovery," but Belfor does not seek recovery from Salem in the State Court. Whatever concern Salem had about a "double recovery," those issues are moot because Belfor's rights to recover against Salem are prescribed by the Plan. Finally, if Salem, Moonbeam, or Williams believe that this litigation (or discovery related to it) concerning non-debtor defendants explicitly not released in a confirmed Plan violates the automatic stay, they, of course, are free to raise such concerns in the Bankruptcy Case.

Any transfer to the Western District of Pennsylvania would likely lead to more fruitless delay. As the Pennsylvania Bankruptcy Court cannot provide complete relief, the transfer would likely require the involvement of yet another court, the District Court for the Western District of Pennsylvania, because the Bankruptcy Court cannot conduct the jury trial demanded by Belfor against Moonbeam and Williams. At that point, multiple courts, state and federal, would have touched this file without any merit determination. By contrast, the Montgomery County (Ohio) Court of Common Pleas, as a state court of general jurisdiction, can provide complete relief to Belfor on its Ohio law claims (related to real property in Ohio) against Moonbeam and Williams. Regardless of the commonality of facts, Moonbeam and Williams, as non-debtor defendants, cannot continue to de facto benefit from the automatic stay based on mere convenience to the

---

(4) whether a stay will simplify the issues; and (5) whether burden of litigation will be reduced for both the parties and the court." *Id.* at *6. Salem is, of course, free to raise its concerns through the discovery process, but they do not justify keeping litigation against non-debtor defendants in abeyance at this stage. This court believes that further delay is prejudicial to Belfor and places it at a tactical disadvantage in this litigation. Further, the need for a stay post-reorganization is lessened and granting it will not necessarily simplify the issues. It would provide no benefit to the court or Belfor, and as noted above, the AP may not moot out the disputes between the parties or cap the damages available. For example, the AP could result in appeals, and the actions against Moonbeam and Williams would still need to go forward.

parties, or fears about potential stay violations that can be addressed at an appropriate time should they actually arise. Further, steps can be taken to minimize duplicative discovery.

**B.        Mandatory Abstention**

Belfor alternatively argues that mandatory abstention applies here. The mandatory abstention statute states:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. 1334(c)(2). Mandatory abstention is applicable when:

> (1) a timely motion is made; (2) the claim or cause of action is based upon state law; (3) the claim or cause of action is 'related to' a bankruptcy case, but did not 'arise in' or 'arise under' the bankruptcy case; (4) the action could not have been commenced in federal court absent § 1334 jurisdiction; (5) the action is commenced in state forum of appropriate jurisdiction; and (6) the action can be timely adjudicated in state court."

*Parrett v. Bank One, N.A.* (*In re Nat'l Century Fin. Enters., Inc., Inv. Litig.*), 323 F. Supp. 2d 861, 873 (S.D. Ohio 2004) (citing *Lindsey v. O'Brien, Tanski, Tanzer & Young Health Care Providers* (*In re Dow Corning Corp.*), 86 F.3d 482, 497 (6th Cir. 1996)). While the District Court litigation was removed from the State Court pursuant to § 1452, mandatory abstention may still apply. *Robinson v. Mich. Consol. Gas Co.*, 918 F.2d 579, 584 n. 3 (6th Cir. 1990).

Many of the applicable factors are present here: Belfor has timely sought abstention relief; the claims are based on state law; the claims, as the District Court determined in the Referral order, did not "arise in" or "arise under" a bankruptcy case; and the action was commenced in a state court forum. As to the question of timeliness, the State Court seems likely to offer at least as timely an adjudication as a transfer to the Western District of Pennsylvania.

11

However, as Salem argued, mandatory abstention will not be available if the case currently in the District Court could have been commenced there based on diversity jurisdiction. 28 U.S.C. § 1332. The court makes no recommendation regarding that issue, as the District Court is best qualified to determine if diversity jurisdiction would have applied in these circumstances, but recommends that the District Court find the other mandatory abstention factors do apply.

**C.    Permissive Abstention**

Belfor also argues that permissive abstention is appropriate. The relevant statute provides that "[e]xcept with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). Abstention is considered a narrow exception to the general rule that federal jurisdiction should be exercised when it exists. *Colorado River Water Conservation Dist. v. U.S.*, 424 U.S. 800, 813 (1976). Courts have considered the following factors to be relevant in determining whether abstention is appropriate:

(1) the effect or lack of effect on the efficient administration of the estate if a court abstains;
(2) the extent to which state law issues predominate over bankruptcy issues;
(3) the difficulty or unsettled nature of the applicable state law;
(4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;
(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;
(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
(7) the substance rather than form of an asserted "core" proceeding;
(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
(9) the burden of this court's docket;
(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
(11) the existence of a right to a jury trial;
(12) the presence in the proceeding of nondebtor parties; and
(13) any unusual or other significant factors.

*Underwood v. United Student Aid Funds, Inc.* (*In re Underwood*), 299 B.R. 471, 476 (Bankr. S.D. Ohio 2003). Similar factors to those under § 1452(b) are often applied. See *Parrett v. Bank One, N.A.* (*Nat'l Century Fin. Enters., Inc. Inv. Litig.*), 323 F. Supp. 2d 861, 885 (S.D. Ohio 2004) ("The analysis under § 1334(c)(1) is largely the same as under § 1452(b)."). Here, these factors appear to weigh in favor of voluntary abstention. As previously discussed, abstention would have a limited impact on Salem as a reorganized debtor, and Salem's confirmed Plan eliminates any concerns about the added complication of managing state court litigation while going through the process of a bankruptcy reorganization. The issues that would be remanded to the State Court are Ohio state law claims, although they do not appear to be novel issues. As noted, any jurisdiction has been, at least as so far determined by the District Court, based solely on 28 U.S.C. § 1334. While the facts in the State Court Case overlap with the AP, that litigation concerns claims for which Moonbeam and Williams may be separately liable and could include punitive damages not available in the bankruptcy proceeding. Severance of bankruptcy claims has already effectively occurred because, while the AP will resolve the extent of any Belfor claim against Salem to be paid pursuant to the Plan, the Bankruptcy Case cannot be the forum to try the claims against the non-debtors. Further, the removal of the litigation from the State Court can be interpreted as an effort by Salem, and now Moonbeam and Williams, to seek a forum more to its liking. Additionally, Belfor has constitutional jury trial rights against non-debtor parties.

For all these reasons, the court recommends permissive abstention be determined appropriate in these circumstances.

## V. Conclusion

Pursuant to 28 U.S.C. § 1452(b), this court recommends that the District Court for the Southern District of Ohio remand Case No. 3:21-cv-78 (S.D. Ohio) to the Montgomery County (Ohio) Court of Common Pleas to allow Belfor to pursue its state law causes of action against Moonbeam and Williams. Alternatively, permissive abstention is appropriate. This court does not recommend holding the litigation in abeyance until the determination of the AP, or referring it, pursuant to 28 U.S.C. § 1412, to the United States District Court for the Western District of Pennsylvania.

Copies to:

Served Electronically

Thomas E. Cardone
Michael Leo Pomeranz
    (Counsel for the Plaintiff)

Kerri Lynn Sturm
Jeffrey C. Toole
    (Counsel for Defendant Salem Consumer Square OH LLC)

Michael W. Sandner
    (Counsel for Defendants Leon W. Williams, Jr. and Moonbeam Capital Investments)

James B. Lind
    (Counsel for Nations Roof of Ohio, LLC)


Served by First Class Mail

Michael F. Jacobson, 27777 Franklin Rd., Ste. 2500, Southfield, MI 48034
    (Counsel for the Plaintiff)

John J. Richardson, 601 Grant St., 9th Floor, Pittsburgh, PA 15219
Kirk B. Burkley, 707 Grant St., Ste. 2200, Pittsburgh, PA 15219-1945
Harry W. Greenfield, 600 Superior Ave. E, Fifth Third Center, Ste. 1300, Cleveland, OH 44114
    (Counsel for Salem Consumer Square OH LLC)